Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
Brittany C. Casola (CA 306561)
bcasola@carlsonlynch.com
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1350 Columbia St. Ste. 603
San Diego, California 92101
Tel: (619) 762-1900
Fax: (619) 756-6991

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN SCHERTZER, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No. **'19CV0264 JM  MSB**<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Kristen Schertzer ("Plaintiff"), on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of herself and classes of all similarly situated consumers against Defendant Bank of America ("BOFA," or "Bank"), arising from a practice that breaches the Bank's contracts and is deceptive and designed to unfairly increase the Bank's fee revenue.

2. This consumer class action challenges Bank of America's systematic practice of charging more than its promised rate of 3.00% when it assesses International Transaction Fees on its customers' international debit card transactions.

3. International Transaction Fees are assessed by certain retail banks, including Bank of America, when a customer makes a purchase with his or her debit card at an international retailer or when a withdrawal is made at an international ATM. Retail banks, including Bank of America, charge a flat percentage of the transaction amount.

4. BOFA's standard account agreement, the "Deposit Agreement and Disclosures" (Account Agreement) and its accompanying fee disclosures, the "Personal Schedule of Fees," ("Fee Schedule") govern all of their consumer deposit accounts in the United States, including Plaintiff Schertzer's checking account.

5. As set forth in the Fee Schedule, BOFA charges accountholders International Transaction Fees of exactly 3.00% of the purchase amount on: 1) debit card purchases made at international vendors; 2) ATM withdrawals made at International ATM machines; and 3) internet purchases using a debit card made on websites of international merchants. *See* Exhibit No. 1, "Personal Schedule of Fees, P.9, November 2, 2018.

6. BOFA's Account Agreement and Fee Schedule do not permit BOFA to charge International Transaction Fees in excess of 3.00%. However, BOFA engages in a systematic, routine process of "rounding up," to the nearest penny, in the assessment of its

International Transaction Fees, which in turn, permits the Bank to assess International Transaction Fees as high as 5.2% of the total value of the transaction.

7. BOFA undertakes to maximize International Transaction Fees with a deceptive practice which also violates its contracts. As discussed more fully below, it is a breach of the Bank's contract and of reasonable consumers' expectations for the Bank to charge International Exchange Fees in excess of 3.00%.

8. This rounding up is improper. Other banks refuse to engage in this practice. For example, one of BOFA's primary market competitors in California, Union Bank, N.A., has a policy of "rounding down" to stay beneath Union Bank's disclosed International Transaction Fee of 2.00%.

9. Plaintiff, and other BOFA customers, have been injured by BOFA's improper practices. On behalf of herself and the Class, Plaintiff seeks damages, restitution and injunctive relief for BOFA's breach of contract and violation of California consumer protection laws.

**PARTIES**

10. Kristen Schertzer is a citizen and resident of San Diego, California and holds a BOFA checking account.

11. Defendant BOFA is national bank with over 4,500 retail branches. Bank of America has its headquarters and principal place of business in Charlotte, North Carolina. Among other things, Bank of America is engaged in the business of providing retail banking services to customers, including Plaintiff Schertzer and members of the putative class, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Bank of America operates banking centers and conducts business throughout the State of California.

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class embers exceed

$5 million, exclusive of interests and costs, and at least one member of the proposed class is a citizen of a different state than BOFA.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because BOFA is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

14. International Transaction Fees are charged by debit card-issuing retail banks when transactions made by their customers process in foreign currencies or pass through a foreign bank in the payment settlement process.

15. International Transaction Fees are usually comprised of two components. The first is a fee levied by the retail bank, which is typically a 1.00% to 2.00% fee on purchases or ATM withdrawals made abroad. Second, the card's payment network, such as Visa or Mastercard will tack on another fee, typically 1% of the total value of the transaction. The 1% added by the payment network(s) is referred to in the industry as the currency conversion fee, which is assessed by the payment network when a purchase is made in a currency other than U.S. dollars.

16. Despite these separate components, International Transaction Fees are typically disclosed and presented to retail banking customers in deposit account agreements and/or fee disclosure schedules as a fixed percentage, flat fee, ranging from 1.00% to 3.00% of the total value of the international transaction at issue.

17. Bank of American's Foreign Transaction Fee is not mentioned in its standard, 70 page, Deposit Agreement and Disclosures. *See* Exhibit, "2" Deposit Agreement and Disclosures (Effective November 2, 2018). It appears only, as incorporated by reference, in the Bank of America Personal Schedule of Fees. *See* Exhibit "1" Bank of America Personal Schedule of Fees, P.9.

18. Bank of America levies International Transaction Fees at the highest rate among the largest consumer retail banks in the U.S., at 3% per transaction.

19. Bank of America processes hundreds of thousands of international debit card transactions each day. When the Bank rounds up each International Transaction Fee amount in violation of its contract, it goes largely unnoticed by accountholders, but the Bank creates for itself millions of dollars in extra revenue annually.

A. **BOFA's International Transaction Fee**

20. The BOFA standard Deposit Agreement and Disclosures (Effective November 2, 2018) is the contract which governs the relationship between each account holder and the bank. The standard Deposit Agreement and Disclosures incorporates by reference, the Personal Schedule of Fees (Effective November 2, 2018). The Personal Schedule of Fees states:

| **International Transaction Fee** | **3% of the U.S. Dollar amount of the transaction** | <ul><li>Fee applies if you use your card to purchase goods or services in a foreign currency or in U.S. Dollars with a foreign merchant (a "Foreign Transaction"). Foreign Transactions include internet transactions made in the U.S. but with a merchant who processes the transaction in a foreign country.</li><li>Fee also applies if you use your card to obtain foreign currency from an ATM. Visa® or Mastercard® converts the transaction into a U.S. dollar amount , and the International Transaction Fee applies to that converted U.S. dollar amount. ATM fees may also apply to ATM transactions. See ATM Fees section below.</li><li>See disclosure information that accompanied your card for more information about this fee.</li></ul> |
|---|---|---|

*See* Exhibit No. 1, Fee Schedule, P. 9, Effective November 2, 2018.

21. The Personal Schedule of Fees states unambiguously that Bank of America will not charge more than 3% of the U.S. Dollar amount of the transaction. Simply put, the

Bank may not ever assess an International Transaction Fee that exceeds 3.00% of the transaction amount.

22. However, BOFA charges in excess of 3.00% on approximately half of all international debit card transactions. In fact, in violation of its contract and without disclosing this to its accountholders, BOFA systematically rounds up International Transaction Fee amounts. This systematic, automated, rounding practice ensures that Bank of America charges foreign transaction fees in amounts greater than the 3.00% contractual limit and in some cases up to 5% of the total transaction amount.

23. For example, on a transaction amount of $10.17, Bank of America calculates the Foreign Transaction fee by multiplying 3% (0.03) x $10.17 = $0.3051. It then, systematically rounds up the $0.3051 to $0.31. However, in so doing, it violates its Personal Schedule of Fees, because $0.31 is actually 3.04% of the $10.17, not 3.00% as provided for by the contract. Simply stated, in order to avoid exceeding the maximum permissible fee of 3.00%, Bank of America is required to round down when calculating the fee. This is why other banks, including one of its largest California competitors, Union Bank, N.A., for example, "rounds down" when assessing its customers' foreign transaction fees to avoid a similar occurrence.

24. BOFA breached its contract and deceived its customers when it assessed International Transaction Fees in excess of 3.00% due to the Bank's uniform rounding practice.

**B.   Plaintiff Schertzer's Experience**

25. Ms. Schertzer maintains a regular checking account at BOFA. Ms. Schertzer is a citizen of California and resides in San Diego, California 92101. On or about June 28, 2018, Ms. Schertzer traveled to London on her way to a European vacation. Ms. Schertzer, engaged in several foreign debit card transactions over the course of her nearly two week vacation.

26. For example, Ms. Schertzer made a debit card purchase in Amsterdam, Netherlands on July 9, 2018 for $0.19. BOFA, in its processing of the International

Transaction Fee, multiplied the $0.19 x 3% and arrived at $0.0055 cents, a fraction of a penny. Rather than waiving this charge as *de minimis*, Bank of America, "rounded up" and assessed Ms. Schertzer a Foreign Transaction Fee of $0.01. The $0.01 Foreign Transaction Fee applied by Bank of America to Ms. Schertzer's $0.19 charge is approximately 5.26% of the total value of her transaction – well over the total permissible contract rate of 3.00%. Ms. Schertzer received several additional overcharges on her trip as a result of Bank of America's rounding practice.

27. On or about August 13, 2018, Ms. Schertzer traveled to Tijuana, Mexico for a brief trip. Bank of America again assessed her International Transaction Fees in excess of the permissible contract rate delineated by the Fee Schedule.

28. Ms. Schertzer was charged the following International Transaction Fees on her two trips (one to Europe in July 2018 and one to Mexico in August of 2018) in violation of the mandated 3.00% as set forth on the BOFA Fee Schedule:

/ / /

| Date of Transaction: | Amount of Debit Card Purchase: | Int. Tran. Fee Assessed by BOFA: | Total % of the International Transaction Fee: Max Rate = 3.00% |
|---|---|---|---|
| 07/02/2018 | $13.22 | $0.40 | 3.03% |
| 07/02/2018 | $6.61 | $0.20 | 3.03% |
| 07/02/2018 | $18.50 | $0.56 | 3.03% |
| 07/02/2018 | $6.61 | $0.20 | 3.03% |
| 07/02/2018 | $11.90 | $0.36 | 3.03% |
| 07/02/2018 | $30.87 | $0.93 | 3.01% |
| 07/05/2018 | $4.96 | $0.15 | 3.02% |
| 07/05/2018 | $0.19 | $0.01 | 5.26% |
| 07/09/2018 | $56.84 | $1.71 | 3.01% |

| 07/09/2018 | $26.89 | $0.81 | 3.01% |
| --- | --- | --- | --- |
| 07/09/2018 | $23.53 | $0.71 | 3.02% |
| 07/09/2018 | $3.52 | $0.11 | 3.13% |
| 07/09/2018 | $23.54 | $0.71 | 3.02% |
| 07/11/2018 | $16.60 | $0.50 | 3.01% |
| 07/11/2018 | $10.97 | $0.33 | 3.01% |
| 07/11/2018 | $12.30 | $0.37 | 3.01% |
| 8/13/2018 | $10.17 | $0.31 | 3.05% |
| 8/13/2018 | $17.19 | $0.52 | 3.02% |

29. Ms. Schertzer was overcharged $0.18 on her two trips alone from July, 2018 and August 2018. Bank of America boasts over 47 million accounts (*See* Bank of American Annual Report 2017, p.35, Executive Summary; Business Overview). If even one quarter or one third of those accountholders engaged in international travel or made internet purchases from foreign retailers, the Bank's ill-begotten gains from its rounding practice amount to millions of dollars per year.

30. Simply stated, the stolen pennies add up to millions of dollars.

**C.   BOFA Abuses Discretion**

31. To the extent the account documents do not explicitly permit the charging of International Transaction Fees in excess of 3.00%, as described above, BOFA exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

32. BOFA routinely and systematically charges International Transaction Fees over and above the contractually permissible rate of 3.00% of the total amount of the transaction, by rounding up, in the calculation of the fee to the nearest penny. What this means is when BOFA multiplies 3% times the total dollar amount of the foreign transaction, if the third decimal place results in a "5" or higher number, the fee assessed is "rounded up" to the nearest penny. The result of this rounding is that fractional charges of

a penny, become full pennies, pushing the aggregate International Transaction Fee well above the permissible 3.00%.

33. BOFA uses its discretion to round up these calculations without informing or disclosing to its customers that, in so doing, the aggregate International Transaction Fee will exceed 3.00%. BOFA uses its discretion in an unreasonable way that violates common sense and reasonable consumer expectations. BOFA uses its contractual discretion to set the meaning "3%" to include charges of 3.01%-5.26% of the aggregate foreign transaction amount; a choice that directly causes an improper amount of International Transactional Fees to be imposed.

34. By assessing International Exchange Fees in this manner, BOFA engages in bad faith and contradicts reasonable consumer expectations.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on her own behalf and all others similarly situated. The Class includes:

> All holders of a BOFA checking account who, within the applicable statute of limitation preceding the filing of this lawsuit, incurred an International Transaction Fee in excess of 3.00% on an International Transaction conducted with a Debit Card (the "National Class").

> All holders of a BOFA checking account in the State of California who, within the applicable statute of limitation preceding the filing of this lawsuit, incurred an International Transaction Fee in excess of 3.00% on an International Transaction conducted with a Debit Card (the "California Class").

36. Excluded from the Classes are Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which defendants have a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

37. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a Subclass(es) if necessary before this Court determines whether certification is appropriate.

38. The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual class members because BOFA has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

>a. Whether BOFA improperly "rounds up," to the nearest penny, all International Transaction Fees assessed on foreign debit card transactions.

>b. Whether such conduct violates the contract;

>c. Whether such conduct is deceptive or in bad faith; and

>d. Whether Plaintiff and other members of the Class have sustained damages as a result of BOFA's wrongful business practices described herein, and the proper measure of damages.

39. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to BOFA's records. BOFA has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

40. It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for

obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. No consumer would individually pursue a claim for these amounts. This type of conduct is precisely within the ambit of the F.R.C.P. Rule 23.

41.  Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by BOFA, as described herein.

42.  Plaintiff is more than an adequate representative of the Classes in that she has a BOFA checking account and has suffered damages as a result of BOFA's usurious and improper business practices.  In addition:

    a.  Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

    b.  There is no conflict of interest between Plaintiff and the unnamed Class members;

    c.  They anticipate no difficulty in the management of this litigation as a class action; and

    d.  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

43.  Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

44.  BOFA has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

45.  All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT INCLUDING THE COVENANT
### OF GOOD FAITH AND FAIR DEALING

**(On Behalf of Plaintiff, the Nationwide Class, and the California Class)**

46. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

47. Plaintiff and BOFA contracted for checking account and debit card services, as embodied in the Account Agreement and Fee Schedule.

48. The Fee Schedule states that BOFA will assess an International Transaction Fee ***capped at 3%.*** *See* Exhibit No. 1, Fee Schedule, P. 9. (bold and italics added).

49. BOFA breached its contract with Ms. Schertzer and class members when it assessed International Transaction Fees in excess of 3.00%, as described herein.

50. Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to Account Agreement and Fee Schedule.

51. Plaintiff and members of the putative Class have sustained monetary damages as a result of Defendant's breach.

52. Under the laws of the State of California and other states where BOFA does business, good faith is an element of every contract. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

53. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

54. BOFA breached the covenant of good faith and fair dealing in its Account Agreement and Fee Schedule by engaging in the policies and practices as alleged herein. Specifically, BOFA abuses its discretion under the contract by rounding up transactions such that BOFA charges International Transaction Fees exceeding 3.00% on a per transaction basis.

55. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

56. Plaintiff and members of the Class have sustained damages as a result of BOFA's breach of the contract and breach of the covenant of good faith and fair dealing.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE UCL**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

57. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

58. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." BOFA's conduct related to the imposition of International Exchange Fees violated the statute's "unfair" and "fraudulent" prongs.

59. BOFA committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by representing to Plaintiff and the public that it will charge only a flat 3.00% fee for international debit card transactions. BOFA failed to disclose that its rounding practices result in the assessment of such fees in excess of 3.00%.

60. BOFA committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it affirmatively and knowingly misrepresented that it charges a flat 3.00% International Transaction Fee.

61. As a direct and proximate result of BOFA's unfair and deceptive practices, Plaintiff and Class members suffered and will continue to suffer actual damages.

62. As a result of its unfair and deceptive conduct, BOFA has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

63. Plaintiff and the Class further seek an order enjoining BOFA's unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

### THIRD CAUSE OF ACTION
### CONVERSION
**(On Behalf of Plaintiff, the National Class, and the California Class)**

64. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

65. BofA had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

66. BofA has collected excessive International Transaction Fees from Plaintiff and the members of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

67. BofA has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Classes, without legal justification.

68. BofA continues to retain these funds unlawfully without the consent of Plaintiff or members of the Classes.

69. BofA intends to permanently deprive Plaintiff and the members of the Classes of these funds.

70. These funds are properly owned by Plaintiff and the members of the Classes, not BofA, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Classes.

71. Plaintiff and the members of the Classes are entitled to the immediate possession of these funds.

72. BofA has wrongfully converted these specific and readily identifiable funds.

CLASS ACTION COMPLAINT

73. BofA's wrongful conduct is continuing.

74. As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Classes have suffered and continue to suffer damages.

75. By reason of the foregoing, Plaintiff and the members of the Classes are entitled to recover from BofA all damages and costs permitted by law, including all amounts that BofA has wrongfully converted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for herself and the Class members as follows:

(a) Certifying this matter as a class action;

(b) Designating Plaintiff as an appropriate Class representative and her counsel as Class Counsel;

(c) Declaring BOFA's practice of charging International Transaction Fees in excess of 3.00% to be wrongful, unfair, deceptive, and a breach of contract;

(d) Restitution of all relevant International Exchange Fees paid to BOFA by Plaintiff and the Classes, as a result of the wrongs alleged herein an amount to be determined at trial;

(e) Disgorgement of the ill-gotten gains derived by BOFA from its misconduct;

(f) Actual damages in an amount according to proof;

(g) Statutory, punitive, and exemplary damages, as permitted by law;

(h) Pre-judgment interest at the maximum rate permitted by applicable law;

(i) An order enjoining BOFA from continuing to misrepresent its International Transaction Fee policies in its publicly available documents and marketing materials, such as its "Account Agreement" and "Fee Schedule"

(j)     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

(k)     Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: February 5, 2019

                                               **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

                                               */s/ Todd D. Carpenter*_____

                                               Todd D. Carpenter (CA 234464)
                                               1350 Columbia St., Ste. 603
                                               San Diego, California 92101
                                               Telephone: 619.762.1900
                                               Facsimile:  619.756.6991
                                               tcarpenter@carlsonlynch.com

                                               *Attorneys for Plaintiff*