UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KRISTEN SCHERTZER, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BANK OF AMERICA, N.A, et al.,

Defendants.

Case No.: 19cv264 JM(MSB)

**ORDER ON MOTIONS TO DISMISS**

## I.    INTRODUCTION

Plaintiffs Kristen Schertzer, Meagan Hicks and Brittany Covell have brought this putative class action case, on behalf of themselves and all others similarly situated, against Bank of America, N.A., Cardtronics Inc., FCTI, Inc., and Cash Depot Ltd. (collectively "Defendants") essentially claiming deceptive, misleading, and unwarranted practices have been employed in the charging and collecting of bank balance inquiry fees.

Presently before the court are four motions to dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. Nos. 97, 98, 99, 100.)  The motions have been fully briefed and the court finds them suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

On February 5, 2019, Plaintiffs initiated this proposed (or putative) class action by filing suit.  (Doc. No. 1.)  On May 31, 2019, a second amended complaint ("SAC") was filed alleging original jurisdiction under the Class Action Fairness Act ("CAFA") of 2005 and, specifically under 28 U.S.C. § 1332(d)(2) and setting forth a total of thirteen claims against the defendants individually and collectively.  (Doc. No. 56, "SAC".)  On March 4, 2020, this court granted Defendants' motions to dismiss with leave to amend.  (Doc. No. 94.)

On March 24, 2020, the third amend complaint ("TAC") was filed, again claiming original jurisdiction under CAFA.  (Doc. No. 96.)  It alleges claims for: (1) violation of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq*; (2) breach of the covenant of good faith and fair dealing; and (3) unjust enrichment.  (*Id.* at 34-43[1].)

The allegations in the TAC can be divided into two categories.  First, Plaintiffs assert that the independent Automatic Teller Machine ("ATM") operators Cardtronics, Inc. ("Cardtronics"), Cash Depot, Ltd. ("Cash Depot"),  and FCTI, Inc., ("FCTI"), (collectively, the "ATM Defendants") deceptively, unlawfully and systematically maximize the number of out-of-network ("OON") ATM balance inquiries bank accountholders performed by placing misleading representations on the screens and on signs at ATMs they operate regarding the fees that would be charged for balance inquiries.  (*Id.* ¶¶ 1, 3, 4, 15, 16, 18-20, 29, 30-44, 47-53, 55-67, 127-130, 138-143, 151-155.)  Second, Plaintiffs allege Bank of America ("BofA") charged its customers unwarranted fees for OON ATM balance inquiries. (TAC at ¶ 2, 5, 6, 15, 16, 69-80, 159-167.)

Attached to the TAC are the Deposit Agreement and Disclosures (Doc. No. 96-2, Ex.1 "the Agreement") and the Personal Schedule of Fees (Doc. No. 96-3, Ex.2 "Fee

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

Schedule"). No party disputes that these are the contract documents between BofA and the Plaintiffs. The electronic bank services fee provision of the Agreement provides:

> *ATM Fees* When you use an ATM that is not prominently branded with the Bank of America name and logo, you may be charged a fee by the ATM operator or any network used and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer. We may also charge you fees.
>
> *Other Fees* For other fees that apply to electronic banking services, please review the Schedule of Fees for your account and each agreement or disclosure that we provide to you for the specific electronic banking service, including the separate agreement for Online and Mobile Banking services and the separate agreement for ATM and debit cards.

*Id.* at 35. The Fee Schedule that was in effect beginning May 18, 2018, allows for the following ATM fees:

| Fee Category | Fee Name/Description | Fee Amount | Other Important Information About This Fee |
|---|---|---|---|
| **ATM Fees**<br><br>**Bank of America ATM** – an ATM that prominently displays the Bank of America name and logo on the ATM<br><br>**Non-Bank of America ATM** – an ATM that does not prominently display the Bank of America name and logo on the ATM | Withdrawals, deposits, transfers, payments and balance inquiries at a Bank of America ATM | No ATM fee | • Deposits and payments may not be available at some ATMs. Transaction fees may apply to some accounts. See account descriptions in this schedule. |
| | Non-Bank of America ATM Fee for:<br><br>Withdrawals, transfers and balance inquiries at a non-Bank of America ATM in the U.S. | $2.50 each | • When you use a non-Bank of America ATM, you may also be charged a fee by the ATM operator or any network used and you may be charged a fee for a balance inquiry even if you do not complete a funds transfer.<br>• The non-Bank of America ATM fees do not apply at some ATMs located outside the United States…<br>• See the disclosure information that accompanied your card for other fees that may apply.<br>• Non-Bank of America ATM fees are in addition to other account fees that may apply to the transaction, such as a Withdrawal Limit Fee for savings.<br>• Preferred Rewards Platinum customers using a Bank of America Debit or ATM card are not charged the non-Bank of America ATM fee for one withdrawal, transfer and |

19cv264 JM(MSB)

| | | | | balance inquiry per statement cycle from a non-Bank of America ATM in the U.S., and receive a refund of the ATM operator fee for one withdrawal, transfer and balance inquiry per statement cycle from a non-Bank of America ATM in the U.S. |
| --- | --- | --- | --- | --- |
| | | | | • Preferred Rewards Platinum Honors customers using a Bank of America Debit or ATM card are not charged the non-Bank of America ATM fee for withdrawals, transfers and balance inquiries from non-Bank of America ATMs in the U.S. and receive a refund of the ATM operator fee for withdrawals, transfers and balance inquiries from non-Bank of America ATMs in the U.S. |

Fee Schedule at 10.

On June 1, 2018, Plaintiff Schertzer used her BofA ATM Payment Card at a Cardtronics ATM located at 645 Market St., San Diego, California, 92101, to withdraw $60, for which she was charged a total of $8.75 in fees – $3.75 cash withdrawal fee by Cardtronics, $2.50 OON fee by BofA for making a balance inquiry and $2.50 by BofA for making a cash withdrawal. (TAC at ¶¶ 81, 84.) Ms. Schertzer is only challenging the fee for the balance inquiry. (*Id.* at ¶ 84.) On May 29, 2018, Plaintiff Covell used her BofA ATM Debit Card at a FCTI ATM at a Seven Eleven (7-11) convenience store located at 592 Santa Fe Drive, Encinitas, California, to withdraw $20, for which she was charged a total of $10.50 in fees – $3.00 cash withdrawal fee by FCTI, $2.50 OON fee by BofA for making a balance inquiry, $2.50 by BofA for making a cash withdrawal, and a second balance inquiry fee of $2.50 by BofA. (*Id.* at ¶¶ 88, 91.) Ms. Covell is only challenging the second "phantom" balance inquiry fee charged by BofA. (*Id.* at ¶ 91.) On June 2, 2018, Plaintiff Hicks, a BofA account holder, withdrew $20 from a Cash Depot ATM in Walmart located at 4840 Shawline St., San Diego, California, 92111, for which she was charged a total of $7.00 in fees – $2.50 cash withdrawal fee by Cash Depot, $2.50 fee by

BofA for making a balance inquiry and $2.50 by BofA for making a cash withdrawal. (*Id.* at ¶¶ 95, 97.) Ms. Hicks is only challenging the balance inquiry fee. (*Id.* at ¶ 100.)

Plaintiff Schertzer seeks to represent the "California Cardtronics Class" consisting of:

> All holders of a checking account in California who, within the applicable statute of limitations preceding the filing of this lawsuit, were assessed one or more out-of-network balance inquiry fees for purportedly undertaking a balance inquiry as part of a cash withdrawal at a CARDTRONICS ATM.

*Id.* at ¶ 106. Plaintiff Hicks seeks to represent the "California Cash Depot Class" consisting of:

> All holders of a checking account in California who, within the applicable statute of limitations preceding the filing of this lawsuit, were assessed one or more fees for purportedly undertaking a balance inquiry at the same time as a cash withdrawal at a Cash Depot ATM.

*Id.* at ¶ 108. Plaintiff Covell seeks to represent the "California FCTI Class" and the "National FCTI Class" consisting of:

> All holders of a checking account who, within the applicable statute of limitations preceding the filing of this lawsuit, were assessed more than one fee for purportedly undertaking a balance inquiry at the same time as a cash withdrawal at a FCTI ATM (the "National FCTI Class").

> All holders of a checking account in California who, within the applicable statute of limitations preceding the filing of this lawsuit, were assessed more than one fee for purportedly undertaking a balance inquiry at the same time as a cash withdrawal at a FCTI ATM (the "California FCTI Class").

*Id.* at ¶ 107. All three Plaintiffs seek to represent a Nationwide BofA class and a California sub-class of BofA checking account holders who were assessed one or more fees for undertaking a balance inquiry as part of a cash withdrawal at a Cardtronics, FCTI or Cash Depot ATM. (*Id.* at ¶¶ 109, 110.)

The prayer for relief seeks, amongst others, restitution, disgorgement, damages and an order enjoining Defendants from "continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this complaint." (*Id.* at 44.)

On April 8, 2020, Defendants FCTI, Cash Depot, Cardtronics, and BofA separately filed motions to dismiss.  (Doc. Nos. 97, 98, 99, 100.)  Plaintiffs filed their oppositions to the motions, (Doc. Nos. 101, 102, 103, 104) and Defendants filed replies, (Doc. Nos. 105, 106, 107, 108).

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  This is because a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).  Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons,* 461 U.S. 95, 101 (1983).  Article III requires that: "(1) at least one named plaintiff suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citation omitted).  Plaintiff has the burden of establishing that the court has subject matter jurisdiction over

19cv264 JM(MSB)

an action.  *Ass'n of Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000).  "For purposes of ruling on a motion to dismiss for want of standing, both the trial judge and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party."  *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)).  "At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  *Id.*  (citation and internal quotation marks omitted).

## IV.  DISCUSSION

The court will once again group the arguments for dismissal under the Rules by which they were made.   The Defendants primarily focus on Rule 12(b)(6), so the court will begin its analysis there, before turning to the Rule 12(b)(1) arguments.

### A. Motions to Dismiss Under Rule 12(b)(6)

All Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) contending that Plaintiffs have failed to plead the necessary elements of their asserted claims.

### 1.  *Claims Brought Against the ATM Defendants Under the Fraud Prong of the UCL*

Setting forth various arguments in support of their positions, the ATM Defendants move to dismiss the UCL claims on the grounds that the Plaintiffs have failed to state claims under the fraud prong of the statute.  FCTI seeks dismissal of the UCL claim brought against it arguing that Covell has failed to plead the claim with the requisite particularity, has not pled fraudulent conduct and is not entitled to restitution under the UCL.  (Doc. No. 97-1 at 9-15.)  Cash Depot moves to dismiss the UCL claim Hicks brought against it because non-restitutionary disgorgement is not an available remedy and Hicks has failed to allege an element of the claim, namely causation.  (Doc. No. 98-1 at 15-20.)  Cardtronics

seeks dismissal of the UCL claim arguing Schertzer has not alleged that it has engaged in any fraudulent conduct.  (Doc. No. 99-1 at 9-14.)

The UCL protects California's citizens by prohibiting any "unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE §17200.  "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs."  *Davis v. HSBC Bank Nevada, N.A,* 691 F.3d 1152, 1168 (9th Cir. 2012).  "Unfair competition" under section 17200 has been defined very broadly by the California Supreme Court to include "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citation and internal quotation marks omitted).  To pursue either an individual or a representative claim under section 17200, a plaintiff "must have suffered an injury in fact and lost money or property as a result of such unfair competition."  *Hall v. Time Inc.,* 158 Cal. App. 4th 847, 849 (2008).

### (i)  *Plaintiffs are entitled to Restitution under the UCL*

The ATM Defendants argue that Plaintiffs are not entitled to restitution because they did not have an ownership interest in the interchange fees[2] paid to the ATM Defendants by BofA.  (Doc. No. 97-1 at 9-12; Doc. No. 98-1 at 15-17; Doc. No. 99-1 at 15-16.)

––––––––––––––––––––––––

[2] As the court explained in its previous order:

OON or "foreign" ATM transactions generate four fees:

The cardholder must pay two of these fees – one to the ATM owner for use of the ATM (known as the "surcharge") and one to the card-issuing bank (known as a "foreign ATM fee").  The card-issuing bank also pays two of these fees – one to the ATM network that routed the transaction (known as a "switch fee") and one to the ATM owner (known as an "interchange fee").

*In re ATM Fee Antitrust Litig*., 686 F.3d 741, 745 (9th Cir. 2012). . . . Cardholders never directly pay interchange fees, rather banks "pass on the

UCL actions are equitable in nature, thus damages cannot be recovered.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  "Disgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution." *Id.* at 1145.  An order of restitution has been defined as "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through the person." *Id.* at 1144 (quoting *Kraus v. Trinity Mgmt Servs., Inc.*, 23 Cal. 4th 116, 126-127 (2000)).

Here, Plaintiffs seek restitution for money lost in the form of OON transaction fees paid to BofA.  Defendants cite *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal 4th 113, 1144 (2003), to argue that restitution cannot be recovered because "the money did not flow from the plaintiff to the defendant."  (Doc. No. 97-1 at 11; Doc. No. 98-1 at 15-17.)  In other words, they assert restitution can only be recovered from funds paid directly to Defendant.  But, the ATM Defendants' arguments related to the request for restitution are not persuasive.[3]  "By stating that Defendant unjustly benefitted by its UCL violations, even though those funds were received indirectly, Plaintiff has provided sufficient underlying facts to sustain allegations in a Rule 12(b)(6) challenge."  *Loomis v. Slendertone*

---

costs of the interchange fees through the foreign ATM fees."  See., e.g., *In re ATM Fee Antitrust Litigation*, 686 F.3d at 750.

Doc. No. 94 at 32.

[3] In its earlier order, the court expressed its concern about the inadequacies of the allegations that the assessment of the OON balance inquiry fee assessed by BofA and the related interchange fees the ATM Defendants receive from BofA were a type of "kickback." (Doc. No. 94. at 31-32.)  Plaintiffs' no longer assert anything nefarious in the charging of the interchange fee (*see generally* TAC).  The court's earlier order did not, as Cardtronics suggest, require Schertzer "allege a conspiracy between banks and ATM owners." (Doc. No. 99-1 at 7.)

*Distribution, Inc.*, 420 F. Supp. 3d 1046, 1078 (S.D. Cal. 2019). *See also Cabebe v. Nissan of N. Am., Inc.,* No. 18-cv-000144-WHO, 2018 WL 5617732, at *5 (N.D. Cal. Oct. 26, 2018) *("*In *Schersher v. Superior Court*, the California Court of Appeal held that *Korea Supply* does not limit UCL restitution claims to direct purchases as a matter of law."); *Ferrington v. McAfee*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *8 (N.D. Cal. Oct. 5, 2010) (the distinction between restitutionary disgorgement and non-restitutionary disgorgement does not depend on whether plaintiff paid money directly to defendant, rather it turns "on whether the profits sought to be disgorged would merely 'restore the status quo by returning to the plaintiff funds in which she has an ownership interest' or would achieve something broader.") (quoting *In re First Alliance Mortg. Co.,* 471 F.3d 977, 996 (9th Cir. 2006)).

Although the OON balance inquiry fees about which Plaintiffs complain are paid directly to BofA and are fees charged not by Cardtronics, Cash Depot or FCTI, but by BofA under the terms of the Agreement, (*see generally* the Agreement), Plaintiffs have now tied the ATM Defendants to the OON balance inquiry fees by alleging;

> For each $2.50 fee assessed, BofA pays an "interchange fee" of approximately $0.25 directly to the ATM Defendant who owns the ATM machine where the balance inquiry was conducted. BofA also pays a "Switch Fee" to the network provider (for example, "Plus" or "Star" networks). Therefore, both BofA and the ATM Defendants profit from the accountholder's out-of-network balance inquiries. BofA collects the out-of-network ATM fee from its accountholder ($2.50) and the ATM Defendant collects the interchange fee from BofA ($0.25).

TAC at ¶ 2. Plaintiffs also allege that "immediately after collecting the [OON] fee, BofA then paid $0.25 of the $2.50 fee directly back to the ATM Defendants in the form of an "interchange fee," (*id* at ¶ 15), and "[b]ased on this interchange fee, the ATM Defendants received a directly traceable and standardized amount of money from BofA…each time they misled Plaintiffs…," (*id.* at ¶ 16). Plaintiffs further expand on these allegations by referencing the annual interchange reimbursement schedule published by Visa and a graphic published by the Federal Reserve Bank of Kansas City to illustrate the link between

the OON fee charged by a card issuing bank and the interchange fee earned by the ATM Defendants.  (*Id.* at ¶¶ 16-19.)

The TAC also contains multiple supporting allegations linking the OON fee charged by BofA and the interchange fee earned by the ATM Defendants to the actions of Plaintiffs. The TAC alleges that all three Plaintiffs were assessed an OON ATM balance inquiry fee by BofA in the amount of $2.50 and that BofA, in turn, paid an interchange fee of $0.25 to the ATM Defendants as a direct result.  (*See* TAC at ¶¶ 36, 48, 53, 86, 93, 99.)  Plaintiffs seek restitution of the interchange fees the ATM Defendants earned "because they are directly traceable to the fraudulently induced balance inquiries purportedly performed." (*Id.* at ¶¶ 45, 54, 68, 131, 144, 156.)

Taking these allegations as true, Plaintiffs have sufficiently alleged that the ATM Defendants' unlawful business practices caused Plaintiffs to pay money to BofA in the form of OON balance inquiry fees.  Plaintiffs have also alleged that a portion of those OON balance fees were then passed on to the ATM Defendants and that the ATM Defendants unjustly benefited from the UCL violation.  This is all that is required at the pleadings stage.  The court, therefore, concludes that Plaintiffs may pursue their claim for restitutionary relief.

### (ii)    Claims Pled with Sufficient Particularity

The ATM Defendants all argue that Plaintiffs have failed to state claims under the fraud prong of the statute.  (Doc. No. 97-1 at 12-15; Doc. No. 98-1 at 15-20; Doc. No. 99-1 at 9-14.)

For UCL claims brought under the "fraud prong" a plaintiff need only "'show that members of the public are likely to be deceived' by the business practice or advertising at issue."  *Kowalsky v. Hewlett-Packard Co.,* 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).  To state a valid claim under the UCL, a plaintiff must allege that the defendant's misrepresentation is likely to deceive a reasonable consumer.  *See Davis* 691 F.3d at 1161-62 ("The reasonable consumer is the "ordinary consumer acting reasonably under the circumstances.") (citation and internal

quotation marks omitted).  "To the extent Plaintiff[s] assert[] a UCL claim that is based or grounded in fraud, it must meet the requirements of Rule 9(b)."  *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1050 (E.D. Cal. 2015) (citing *Kearns v. Ford Motor. Co.,* 567 F.3d 1120, 1124-1127 (9th Cir. 2009)).  In other words, Plaintiffs must plead with particularity, the who, what, when, where and how of any allegedly fraudulent conduct.  *Kearns,* 567 F.3d at 1125.

The ATM Defendants point to the Fee Agreement arguing that BofA warned Plaintiffs that a fee would be assessed for a balance inquiry and contend that the simple and straightforward screen prompts on the ATMs were not likely to confuse consumers. (*See* Doc. No. 97-1 at 13; Doc. No. 98-1 at 18-20; Doc. No. 99-1 at 13-15.)  While the court found the SAC difficult to decipher, that Plaintiffs had not sufficiently pled that a reasonable consumer would be deceived by the singular question "Would you like your available Account Balances on a receipt? Main Menu or Yes Continue," and that the claim was not stated with the requisite particularity, (*see* Doc. No. 94 at 41-42), the TAC does not suffer from the same inadequacies.

The Plaintiffs each provide details regarding the date and location of the ATM that they used, how they were confused when confronted with the specific screen prompts on each of the ATM machines used, and how they were surprised to learn of the assessment of the OON balance inquiry fees.  (TAC at ¶¶ 81-84, 88-91, 95-97.)  The TAC alleges that each of the ATM Defendants employed a misleading series of screen prompts at the ATM machines to trick Plaintiffs, and other accountholders, into engaging in OON balance inquiries.  (*Id*. at ¶¶ 20, 127, 151.)  In support of their allegations, Plaintiffs point to customers' experiences and reasonable expectations in utilizing ATM machines, including: (1) having to affirmatively opt-in to performing balance inquiry transactions; (2) receiving a receipt at the conclusion of every cash withdrawal transaction at a BofA ATM, free of charge; and (3) receiving a receipt after they performed a funds transfer, free of charge (*Id*. at ¶¶ 21-28.)  It is alleged that the ATM Defendants preyed on the "reasonable expectations of Plaintiffs and members of the Classes by systematically implementing prompts and other

disclosures at ATM machines that are misleading in order to generate great fee revenue from balance inquiries." (*Id.* at ¶ 29.) Further, the TAC alleges how the ATM Defendants' adoption of the industry wide practice of Balance Inquiry at Start has manipulated customers into performing unintended balance inquiries. (*Id.* at ¶¶ 43, 44, 52, 57, 58.)

Plaintiff Schertzer alleges that Cardtronics' screen prompts were deceptive and misleading because consumers are tricked into performing a balance inquiry by consenting to receive a receipt in conjunction with a cash withdrawal. (*Id.* at ¶ 30.) Schertzer alleges that after entering her PIN, the following screen prompt appears:



(*Id.* at ¶ 30.) She alleges the prompt is deceptive and misleading because it: (1) improperly binds the balance inquiry with the receipt, misleading the customer into believing that they will receive a free receipt at the end of the intended cash withdrawal transaction and; (2) contorts the definition of the word receipt in the context of a balance inquiry because receipts are traditionally provided at the end of a transaction. (*Id.* at ¶¶ 31-40, 127, 128.) Additionally, Schertzer alleges that the use of color coded screen prompts are designed to manipulate customers into pressing buttons that lead to the transmission of unintended balance inquiries to the retail banks, with the Green Button being used "as a strong and immediate visual trigger indicating 'go' or 'proceed' as opposed to the Red Button used as a visual trigger to indicate 'stop'…" (*Id.* at ¶ 41; *see also id.* at ¶ 44.) She alleges that combined, the use of the word "continue" in the green button, the color schemes and the competing button options misdirected account holders into understanding that pressing the green button would result in a free printed receipt and arrival at the main menu whereupon

13

a cash withdrawal could be performed.  (*Id.* at ¶¶ 40-44.)  Schertzer also alleges that all of these "subtle and not-so-subtle tricks" were designed by Cardtronics to exploit customers into making a balance inquiry.  (*Id.* at ¶ 44.)

Additionally, Plaintiff Hicks alleges that Cash Depot prominently displays the message: "Prevent Overdraft Fees Check Your Balance For Free."  (*Id.* at ¶ 47.)  She alleges that this representation is deceptive and misleading because Cash Depot knows that a majority of its customers will be charged an OON ATM balance inquiry fee for checking their balance.  (*Id.* at ¶¶ 48, 49, 140.)  Hicks also complains that Cash Depot knows that nearly every bank in California charges their account holders OON balance inquiry fees. (*Id.* at ¶¶ 49, 139.)  Further, Hicks alleges that she read this representation, relied on it and was "lured into making a balance inquiry that [she] reasonably believed was free based on Cash Depot's misrepresentation."  (*Id.* at ¶ 53; *see also id.* at ¶¶ 52, 97,141.)  In light of these allegations, and those Hicks makes surrounding the link between the OON balance inquiry fee BofA assessed and the interchange fee paid to Cash Depot, (*see e.g., id.* at ¶¶ 2, 15, 16, 53, 99, 144), the court is not persuaded by Cash Depot's argument that Hicks has failed to allege her injury was caused by Cash Depot.  (Doc. No. 98-1 at 18-20.)

Plaintiff Covell brings a slightly different claim against FCTI.  She alleges that FCTI wrongfully imposed a second balance inquiry fee while conceding that FCTI was within its right to assess one balance inquiry fee.   Covell alleges that after encountering the Balance Inquiry at Start screen and seeing her account balance on the screen, she was prompted with the following:



(TAC at ¶ 59.)  It is alleged that trying to simply execute a balance withdrawal, Covell "reasonably selected 'Continue.'"  (*Id*. at ¶ 60.)  Covell's transaction was then terminated by FCTI and she was forced to reinsert her ATM card and re-enter her PIN in order to proceed with her intended cash withdrawal whereupon she was asked if she would like a receipt for "this transaction."  (*Id*. at ¶¶ 61-63.)  After Covell choose yes, she was directed to the main menu, where she proceeded to make a cash withdrawal, she received her cash, a receipt was printed, and her card was returned.  It is alleged that "after the initial request asking the customer if they would like to view their account balance, the customer was never asked for their consent to a second balance inquiry.  They were only asked if they would like a receipt."  (*Id*. at ¶ 65.)  Covell claims she had no reason to suspect that she had committed to a second balance inquiry by simply agreeing to receive a receipt, but that she was charged two separate OON balance inquiry fees by BofA after performing one balance inquiry and one cash withdrawal.  (*Id*. at ¶¶ 67, 152.) [4]

Accepting these factual allegations as true and construing them in the light most favorable to Plaintiffs, the court finds that Plaintiffs have alleged, with enough particularity, a claim under the fraud prong of the UCL.  Accordingly, the ATM Defendants' motions to dismiss the UCL claims on Rule 12(b)(6) grounds are **DENIED**.

_____

[4] Covell is not arguing, as FCTI seems to suggest, (*see* Doc. No. 97-1 at 12), that the Electronic Fund Transfer Act, "Regulation E", 15 U.S.C. § 1693 *et seq*. nor the Act itself requires that an ATM operator disclose to customers that it will receive an interchange fee. Regulation E requires financial institutions to initially disclose "any fees imposed by the financial institution for electronic fund transfers or the right to make transfers," 12 C.F.R. § 205.7(b)(5),  and requires them to disclose ATM fees by providing "notice that a fee may be imposed by an automated teller machine operator as defined in § 205.16(a)(1), when the consumer initiates an electronic fund transfer or makes a balance inquiry, and by any network used to complete the transaction," *id* at § 205.7(b)(11).  If an ATM operator imposes a fee when the consumer initiates an electronic fund transfer or makes a balance inquiry, notice must be given to the customer of the ATM fee.  12 C.F.R. § 205.7(16)(b). Nowhere in the TAC do Plaintiffs make such an argument.  Plaintiff Covell is also not attempting to set forth an aiding and abetting scheme between BofA and FCTI.

### 2. Unjust Enrichment Claim

All of the Defendants move to dismiss the unjust enrichment claim.  BofA seeks dismissal of the claim on the ground that the claim cannot lie because there is a contact between the parties.  (Doc. No. 100-1 at 15-16.) The ATM Defendants argue the unjust enrichment claim falls with the predicate UCL claims, Plaintiffs have failed to allege they are entitled to recover in restitution, and Plaintiff Schertzer was not authorized to include it in the TAC[5].  (Doc. No. 97-1 at 16-17; Doc. No. 98-1 at 21-22; Doc. No 99-1 at 16-17.)

"Unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."). Thus, "when a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution."  *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015*)*.  (citation and internal quotation marks omitted).  In order for a plaintiff to successfully plead an unjust enrichment claim, he/she must show that a benefit was conferred on the defendant through mistake, fraud, coercion, or request. *Nebbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n,* 205 Cal. App. 3d 1415, 1422 (1988).

Here, as explained in detail above, Plaintiffs have adequately pled UCL claims based on the allegations that they were "lured" and "tricked" into making balance inquiries by

---

[5] Cardtronics' argument that the court should dismiss this new cause of action is not persuasive.  (Doc. No. 99-1 at 17-19.)  Although the court did not authorize Plaintiffs to file an amended complaint to include an additional cause of action, it did not specifically limit the scope of the TAC as Cardtronics suggest.  The court also notes that the TAC has been significantly streamlined from the 14 claims contained in the preceding version to the five currently pled.  Finally, the unjust enrichment claim is based on the same underlying conduct previously alleged, therefore, no party will suffer prejudice by inclusion of this claim.  Consequently, the court **DENIES** Cardtronics' motion to dismiss the unjust enrichment claim simply because it is a new claim.

the deceptive screen prompts on the screens of the ATMs belonging to the ATM Defendants.  Additionally, in setting forth their UCL claims against the ATM Defendants, Plaintiffs allege that they are entitled to relief under a quasi-contract cause of action because Defendants engaged in conduct that was "unfair, unconscionable and oppressive" while providing financial services to Plaintiffs, and that the ATM Defendants were "unjustly enriched" as a result.  (*See* TAC at ¶ 172.)  At the pleadings stage, these statements are sufficient to state a quasi-contract cause of action.  *See Astiana*, 783 F.3d at 762.  Accordingly, the court **DENIES** the ATM Defendants' motions to dismiss the unjust enrichment claim.

However, the dispute between Plaintiffs and BofA is covered by a valid and enforceable written agreement, the existence of which Plaintiffs do not deny.  The unjust enrichment claim specifically incorporates by reference all of the preceding allegations, including those related to breach of contract.  (TAC at ¶ 170.)  The claim for unjust enrichment against BofA, therefore, fails.  *See, e.g., Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1389-90 (2012) (plaintiffs precluded from asserting unjust enrichment claim because "plaintiffs' breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement."); *Yeiser Research & Dev. LLC v. Teknor Apex Co*., 282 F. Supp. 3d 1021, 1053 (S.D. Cal. 2017) ("Before reaching the elements of an unjust enrichment claim, a court must satisfy itself that no contract already governs the relevant relationship between the parties."); *World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc*., Case No. 13– cv–03455–WHO, 2014 WL 1411249, at *2 (N.D. Cal. Apr. 11, 2014) (court dismissing with prejudice plaintiff's unjust enrichment claim because it had explicitly pled the existence of enforceable agreements between the parties).  Accordingly, the court **GRANTS** BofA's motion to dismiss with prejudice the unjust enrichment claim.

///

///

///

### 3. *Breach of Contract Claim Related to the Assessment of OON Fees for Balance Inquiry Fees*

BofA seeks dismissal of the breach of contract claim, contending that the court already held that its disclosures "unambiguously allowed for its assessment of the challenged balance inquiry fees." (Doc. No. 100-1 at 11.)

As explained previously, to successfully bring a breach of contract claim in California, "a plaintiff must show: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2001). The determination as to whether a contract is or is not ambiguous is a question of law for the court. *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). "A contract or a provision of a contract is ambiguous if it is reasonably susceptible of more than one construction or interpretation." *Castenada v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981).

The court held in its earlier order that the Fee Schedule clearly provides notice that a BofA account holder will be charged $2.50 for each withdrawal, transfer and balance inquiry at an OON ATM, regardless of whether or not a funds transfer is completed, or a withdrawal has taken place. *See* Fee Schedule at 10, the Agreement at 12. Based on these provisions, the court concluded there was no ambiguity in the Agreement's meaning. (Doc. No. 94 at 26.)

In discussing the breach of contract claim this court stated:

> For the breach of contract inquiry, Plaintiffs' contention [that they did not knowingly make a balance inquiry] misses the mark because regardless of how they were induced, once Plaintiffs selected yes on the ATM screens balance inquiries were performed. The relevant question is, therefore, whether the contract documents provide for the charging of the OON balance inquiry fees.

*Id*. at 25.

18

19cv264 JM(MSB)

BofA asserts this earlier finding applies to the TAC regardless of whether the allegations regarding the ATM Defendants' deceptive screen prompts have materially changed.  (Doc. No. 100-1 at 11-13.)  It also argues that Plaintiffs' contention that their experience at the ATMs imbues a latent ambiguity in the Agreement as to when an OON fee will be charged is without merit.  (*Id.* at 13-14.)  In opposition, Plaintiffs counter that they have plausibly alleged that the contract term "balance inquiry" is a disputed term, is ambiguous on its face or, alternatively, is latently ambiguous.  (Doc. No. 101 at 17-28.)

The TAC alleges that the Agreement fails to define the term, "balance inquiry," thereby reserving exclusive discretion in the hands of BofA to determine when its accountholders have consented to an OON balance inquiry.  (TAC at ¶¶ 73, 161.)  The TAC also alleges:

> The word "inquiry" means: an **act** of asking for information."  In the absence of any explicit definition or disclosure, accountholders, including Plaintiffs, reasonably assumed that they would only be assessed an out-of-network fee if they took an explicit and definite action to directly request their available checking account balance at a non-BofA ATM machine; not in the circumstances presented by the ATM Defendants' conduct.

TAC at ¶ 73; *see also* ¶¶ 164.  Absent a definition to the contrary, Plaintiffs claim the Agreement reasonably only authorizes fees for actions accountholders "knowingly," "explicitly" and "intentionally" undertake.  (*Id.* at ¶ 74.)  Further, Plaintiffs allege that BofA has abused its discretion and adopted an automated process that "blindly accepts the ATM owners' electronic communication that a balance inquiry has been requested by the accountholder.  (*Id.* at ¶ 75; *see also* ¶¶ 166-67.)  Plaintiffs allege that as a result of Plaintiffs' experiences at the ATM Defendants' ATMs, a latent ambiguity is imbued into the Agreement with respect to when an OON balance inquiry fee will be charged in connection with the use of a foreign ATM.  (*Id.* at ¶ 78.)  Finally, Plaintiffs allege that BofA was aware of industry practice, so it knew ATM users would be charged with undertaking balance inquiries they did not request.  (*Id.* at ¶ 79.)

Essentially, Plaintiffs are asking the court to re-examine the contract, this time focusing on the term "balance inquiry."  A court's fundamental goal when interpreting an agreement "is to give effect to the mutual intention of the parties."  *Powerine Oil Co., Inc. v. Super. Ct.*, 37 Cal. 4th 377, 390 (2005); CAL. CIV. CODE § 1636.  In order "[t]o avoid future disputes and to provide predictability and stability to transactions, courts attempt to interpret the parties' intentions from the writing alone, if possible."  *Abers v. Rounsavell*, 189 Cal. App. 4th 348, 356 (2010) (citing CAL. CIV. PROC. CODE § 1636). *See also Am. Alt. Ins. Corp. v Super. Ct.,* 135 Cal. App. 4th 1239, 1245-46 (2006) ("if contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 (1992) ("It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce.")  As this court has written before:

> An agreement is not ambiguous merely because the parties (or judges) disagree about its meaning." *Abers*, 189 Cal. App. 4th at 356.  Instead, "words still matter" and "written agreements whose language appears clear in the context of the parties' dispute are not open to claims of 'latent' ambiguity." *Id.*

*LF Centennial Ltd. v. Z-Line Designs, Inc.*, Case No., 16cv0929 JM(NLS), 2017 WL 6945088, at * 2 (S.D. Cal. Aug 10, 2017).  "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Wolf v. Super. Ct.*, 114 Cal. App. 4th 1343, 1350-51 (2004).

Plaintiffs are correct that the term "balance inquiry" is not expressly defined within the contract documents.  *See generally* the Agreement & Fee Schedule.  The question before the court is, therefore, whether the term "balance inquiry" is a key term in dispute that is open to opposing reasonable interpretations.  *See Lloyd v. Navy Fed. Credit Union*, Case No. 17-cv-1280-BAS-RBB, 2018 WL 1757609, at *9 (S.D. Cal. Apr. 12, 2018) (contract was ambiguous when it failed to define key term, therefore, preventing dismissal of breach of contract claim at the motion to dismiss stage); *Ramirez v. Baxter Credit Union*,

Case No. 16-cv-03763-SI, 2017 WL 1064991, at *5 (N.D. Cal. Mar. 21, 2017) (a bank contract with an account holder that contains no provisions defining a key term in dispute is open to two reasonable interpretations).

Plaintiffs argue that they have plausibly alleged that the contract contains a disputed term because their interactions with ATM Defendants' ATMs could not reasonably be considered a "balance inquiry" under the BofA contract.  (Doc. No. 101 at 10-17.[6]) Plaintiffs contend that "the *sine qua non* of all bank account activity is knowing accountholder instruction."  (*Id.* at 17.)  In support of their position, they point to the two other instances where accountholders are charged fees, withdrawals and transfers, to illustrate how consent is a necessary precondition for these transactions, claiming it was, therefore, reasonable for an accountholder to expect consent to also be required for a balance inquiry.  (*Id*).  Further, Plaintiffs claim that no reasonable person would have understood the term to have the expansive meaning BofA has attributed to it because a Disclaimer contained in the Agreement informs that a fee may be charged "when you use a non-Bank of America ATM," thus confirming that the agency of the account holder is the factor triggering imposition of fees.  (*Id*. at 17-18.)  Relatedly, Plaintiffs argue that the term "balance inquiry" is susceptible to two different meanings, with BofA reading the term expansively to encompass any time an accountholder knowingly consents to a balance inquiry and all other times when they did not, while account holders only intended that authorized balance inquiries would be assessed fees.  (*Id.* at 23.)

---

[6] Specifically, Plaintiffs argue that: (1) Covell's second interaction with the FCTI ATM could not reasonably be considered a "balance inquiry" under the Agreement; (2) after reading the signage above the Cash Depot ATM, Hicks reasonably did not understand that her interaction with the ATM would be considered a balance inquiry under the Agreement; and (3) the deceptive screen prompts and design patterns used by Cardtronics meant that Schertzer could not reasonably understand that her interaction with the Cardtronics ATM would be considered a balance inquiry under the Agreement.  (Doc. No. 101 at 10-17.)

The screen shots of the ATM prompts provided in the TAC illustrate that Plaintiffs Schertzer and Covell were not directly asked if they would like to perform a balance inquiry in the traditional sense of the word.  In Schertzer's case, it is conceivable that as pled, the question "would you like your available Account Balances on a receipt?" led her to believe that she was affirming her choice to receive a "free" receipt at the end of her intended cash withdrawal transaction.  (TAC at ¶¶ 32-40.)  BofA charged Schertzer $2.50 for this "receipt," interpreting her "yes" as consenting to an OON Balance Inquiry.  Similarly, after affirmatively performing a balance inquiry, Covell was presented with the question "would you like to print your Balance and continue the Transaction?"  (*Id.* at ¶ 59.)  Allegedly thinking that selecting continue would allow her to move onwards with her cash withdrawal, the transaction ended.  Covell had to reenter her PIN and was presented with:



(*Id.* at ¶ 62.)  Covell selected yes and BofA charged her $2.50, or a second OON balance inquiry, for this "receipt."  (*Id.* at ¶¶ 63, 66, 67.)  At bottom, Plaintiffs Schertzer and Covell are asking the court to determine if the term "balance inquiry" incorporates consenting to the printing of a receipt for a transaction at OON ATMs.

BofA, in turn, reasonably asserts the terms "when you use" an OON ATM and "balance inquiry" introduce no ambiguity about whether balance inquiries were limited to only those knowingly performed.  (Doc. No. 105 at 8.)  Further, it reasonably contends that the plain language of "when you use" simply describes the initial action account holders take when they "transact" with an OON ATM and that the term "balance inquiry" refers to exactly what it sounds like, an inquiry into a BofA account balance.

Both parties have set forth reasonable, opposing interpretations of the Agreement. Resolving the alleged ambiguity is not appropriate on a motion to dismiss. Moreover, under California law "even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible."[7] *Wolf,* 114 Cal. App. 4th at 1351. *See also A Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div.*, 852 F.2d 493, 496, n. 2 (1989) ("courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous."); *cf. Skilstaf, Inc., v. CVS Caremark Corp.,* 669 F.3d 1005 1017 (9th Cir. 2012) ("A party's assertion of ambiguity does not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation. That conclusion can be reached on a motion for summary judgment or … on a motion to dismiss if the evidence can properly be considered under Rule 12(b)(6)."). Applying the liberal standards, "balance inquiry" is at least plausibly susceptible to the meaning alleged by Plaintiffs Schertzer and Covell. Accordingly, the court **DENIES** BofA's motion to dismiss the breach of contract claim in relation to Schertzer and Covell.

However, the screen that confronted Hicks when she used Cash Depot's ATM contained a straightforward question:

---

[7] The TAC includes citations to articles discussing how Balance Inquiries at Start have been used to increase the number of transactions performed at OON ATM's, leading to unintended balance inquiries. (TAC at ¶ 43.)



(TAC at ¶ 50).  By selecting yes, regardless of the advertising on the outside of the ATM, Hicks consented to a balance inquiry being performed and the contract documents provide for the charging of the OON balance inquiry fees.  Accordingly, the court **GRANTS** BofA's motion as to Hicks, and ***dismisses with prejudice*** her breach of contract claim.

### i.    *Breach of Covenant of Good Faith and Fair Dealing Claim*

The implied covenant of good faith and fair dealing is present in all contracts.  *Marsu B.V. v. Walt Disney Co.,* 185 F.3d 932, 937 (9th Cir. 1999).  "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990) (emphasis in original).  The covenant of good faith "finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith."  *Carma Developers (Cal.) v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992) (citations omitted).

The covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000); *see also L.A. Equestrian Ctr v. City of L.A.*, 17 Cal. App. 4th 432, 447 (1993) ("If there exists a contractual relationship between the parties . . . the implied covenant is limited to assuring

compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract.") (citation omitted). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma*. 2 Cal. 4th at 373.

Here, the Agreement clearly states that when using an OON ATM, customers "may be charged a fee by the ATM operator" for a balance inquiry even if a funds transfer is not completed and also warns that BofA "may" also charge fees. (*See* the Agreement at 35.) But, the basis of Plaintiffs' claim is that the terms of the contract did not expressly allow BofA to charge for OON Balance Fees under the circumstances which they have alleged. Specifically, Plaintiffs allege that "BofA has breached the covenant of good faith and fair dealing in the contract through its assessment of out-of-network balance inquiry fees where customers and Plaintiffs did not knowingly or affirmatively consent to a balance inquiry." (TAC at ¶ 164.) Plaintiffs also allege that BofA applied its discretion and assessed OON balance inquiry fees without taking steps to ensure that its account holders had actually engaged in a balance inquiry transaction. (*Id.* at ¶ 166.) Further, Plaintiffs allege two ways that BofA applied its discretion and defined "balance inquiry" in ways a reasonable consumer would not have anticipated. First, Plaintiffs allege that requesting a free receipt in conjunction with a cash withdrawal could not reasonably be anticipated to be a "balance inquiry." (*Id.* at ¶ 167.) Second, Plaintiffs allege BofA defines "balance inquiry in circumstances where the out-of-network ATM owners it contracts with deceptively and fraudulently register balance inquiry information to BofA." (*Id.* at ¶ 167.)

Thus, Plaintiffs have established a claim for breach of the covenant of good faith and fair dealing. Although they have not pled this separately, it can be read to exist alongside the breach of contract claim. To the extent the charging of the OON balance inquiry fee may not have been prohibited by the Agreement, or that the breach of contract claim ultimately flounders, Plaintiffs may be able to show that BofA's conduct was "nevertheless contrary to the contract's purposes and the parties' legitimate expectations." *Carma*,

2 Cal.4th at 373.  Accordingly, the court **DENIES** BofA's motion to dismiss the implied covenant of good faith and fair dealing claim.

### B. The Rule 12(b)(1) motions

FCTI and Cash Depot move for dismissal under Rule 12(b)(1), asserting this court lacks subject matter jurisdiction because Plaintiffs have not met the Article III standing requirements.  They both argue that Plaintiffs Hicks and Covell have not sufficiently alleged any real and immediate threat of repeated injury by FCTI or Cash Depot to warrant prospective injunctive relief.  (Doc. No. 97-1 at 14-15; Doc. No. 98-1 at 11-15.)  Although not officially labeled a Rule 12(b)(1) motion, Cardtronics also challenge Schertzer's standing to seek injunctive relief.  (Doc. No. 99-1 at 18-19.)  Finally, FCTI attacks Covell's standing to bring claims on behalf of a nationwide class.  (Doc. No. 97-1 at 15-16.)

As the court previously explained, "[t]here is no subject matter jurisdiction without standing, and the "irreducible constitutional minimum" of standing consists of three elements." *Romero v. Securus Technologies, Inc.,* 216 F. Supp. 1078, 1085 (2016).  A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016).  In a class action at least one of the named plaintiffs must meet the Article III standing requirements.  *Bates v. United Parcel Servs., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007).  Defendants' arguments implicate the second and third elements.

### 1. *Plaintiffs' Standing to Seek Prospective Injunctive Relief*

Defendant FCTI moves to dismiss Plaintiff Covell's claim for injunctive relief for the alleged violation of the UCL under Federal Rule of Civil Procedure 12(b)(1), contending that Covell lacks standing to seek such relief because she has not demonstrated a likelihood that she will suffer a repeated injury by FCTI's alleged conduct.  (Doc. No. 97-1 at 14-15.)  Cash Depot and Cardtronics seek dismissal of Hicks' and Schertzer's UCL claims on similar grounds.  (Doc. No. 98-1 at 11-15; Doc. No. 99-1 at 18-19.)  Schertzer, Hicks and Covell contend that they can properly seek injunctive relief that is public in

nature and that the new allegations in the TAC adequately allege an actual or imminent risk of future harm. (Doc. No. 102 at 24-25; Doc. No. 103 at 16-18; Doc. No. 104 at 15-17.)

The court's previous order set forth the pleading requirements necessary for a plaintiff to demonstrate standing to seek prospective relief, so the court need not repeat them here. Suffice it to say, Plaintiffs have alleged an actual and imminent threat of future injury for purposes of Article III standing. They have expressly alleged their intention to continue to use the ATM machines owned by Cardtronics, FCTI and Cash Depot in the future and are therefore:

> seeking an injunction to prevent herself and other[s] from being misled in the future by the [ATM Defendant's name]'s screen prompts. Because ATM transactions are so common, the likelihood of [Plaintiff's name] falling victim to this improper business practice persists in the future.

TAC at ¶¶ 87, 94, 105; *see also id.* at ¶¶ 130, 143, 155. *See Bates,* 511 F.3d at 985 (the likelihood of repetition of the wrong requirement is met by plaintiff establishing a "real and immediate threat of repeated injury."); *see also Ervine v. Desert View Reg'l. Med. Ctr. Holdings, LLC.*, 753 F.3d 862, 868 (9th Cir. 2014) (Article III standing to seek injunctive relief is determined by the "imminent prospect of future injury.") (citations omitted). Thus, Plaintiffs have demonstrated "a sufficient likelihood that [they] will again be wronged in a similar way." *Lyons,* 461 U.S. at 111. Therefore, Plaintiffs Schertzer, Hicks and Covell have standing to seek injunctive relief. Accordingly, the motions to dismiss the claims for injunctive relief under the UCL are **DENIED**.

### 2. *Plaintiff Covell's Claims on Behalf of the Proposed Nationwide Class*

FCTI argues that the claims of absentee class members from outside of California should be dismissed for lack of standing.[8] (Doc. No. 97-1 at 13-14.) It contends that

---

[8] In her opposition, Covell conceded that she will not bring her unjust enrichment claim on behalf of a nationwide class. *See* Doc. No. 104 n. 6.

19cv264 JM(MSB)

Plaintiffs who are not California residents and did not conduct a transaction at an ATM located in California do not have standing to assert a California UCL claim. Plaintiff Covell counters that she has standing to pursue a UCL claim on behalf of a nationwide class because the conduct about which she complains emanates from FCTI's headquarters in California. (Doc. No. 104 at 18-19.)

Courts have allowed extension of the California Supreme Court's statement in *In re Tobacco II Cases*, 46 Cal. 4th 298, 93 (2009) that the UCL's focus is "on the defendant's conduct rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices," to permit application of the UCL where the fraudulent activity emanated from California. *See e.g.*, *Junod v. NWP Servs. Corp.*, Case No. SACV 14-1734-JLS (JCGx), 2015 WL 12712309, at *2 (C.D. Cal., Apr. 2, 2015) ("While there is a presumption against extraterritorial application of the UCL, it may nevertheless, 'be applied extraterritorially where the unlawful conduct that forms the basis of the out-of-state plaintiff's claim occur[ed] in California.") (quoting *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1067 (E.D. Cal, 2013)); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2012 WL 3829653, at 87 (N.D. Cal. July 23, 2013) ("California courts have concluded that state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California.") (citation and internal quotation marks omitted). *See also Ehret* v. *Uber Techs., Inc*., 68 F. Supp. 3d 1121, 1130-31 (N.D. Cal. 2014) (acknowledging "[a] rule permitting application of the UCL or CLRA where the alleged fraudulent activity emanated from California is consistent with the California Supreme Court's statement in *In Re Tobacco II Cases*….) (collecting cases); *LSH CO et al. v. Transamerica Life Ins. Co.*, Case No. 2:18-CV-09711-SJO-KS, 2019 WL 3064422, at *13 (C.D. Cal. Mar. 20, 2019) (Generally, the UCL cannot be applied extraterritorially, but "an exception exists where the unlawful conduct that forms the basis of the out-of-state plaintiff's claim occurs in California.") (citation and internal quotation marks omitted).

Drawing comparisons between this case and the issues before the court in *Junod*, Plaintiff Covell would have the court presume at the motion to dismiss stage that FCTI's fraudulent billing practices were conducted from the company's California headquarters. (Doc. No. 104 at 18.)  Covell argues that FCTI's "practice of miscommunicating to banks that consumers conducted two balance inquires when they only conducted one logically emanated from its California headquarters." (*Id*.)  In response, FCTI argues that Plaintiff's response defies logic because "all communications between the ATM and card-issuing bank are conducted from the ATM itself over a network," and therefore, "if the ATM is not in California, the communication does not "emanate" from California, nor does the conduct occur in California."  (Doc. No. 106 at 7- 8.)

While there are no facts alleged in the TAC to support Covell's contention, there is equally nothing to support Defendant's position.  The court finds that any analysis on whether FCTI's conduct emanated from California is not appropriate at the pleading stage. Accordingly, the motion to dismiss the nationwide class for lack of standing is **DENIED**.

## V.    CONCLUSION

For the reasons set for above, the Court orders as follows:

1. The motion to dismiss the first claim for violation of the UCL brought against Cardtronics on behalf of the California class on Rule 12(b)(6) or 12(b)(1) grounds is **denied**;

2. The motion to dismiss the second claim for violation of the UCL brought against Cash Depot on behalf of the California class on either Rule 12(b)(6) or 12(b)(1) grounds is **denied;**

3. The motion to dismiss the third claim for violation of the UCL brought against FCTI on behalf of the National FCTI Class and the California FCTI class on either Rule 12(b)(6) or 12(b)(1) grounds is **denied**;

4. The motion to dismiss the fourth claim for breach of contract and breach of the covenant of good faith and fair dealing brought against BofA on behalf of the National Class and California Class on Rule 12(b)(6) grounds is **granted in part**

and **denied in part**.  Ms. Hicks' breach of contract claim is **dismissed without leave to amend**; and

5. The ATM Defendants' Rule 12(b)(6) motions to dismiss the fifth claim for unjust enrichment are **denied**.  BofA's motion to dismiss the unjust enrichment claim on Rule 12 (b)(6) grounds is **granted without leave to amend**.

Defendants must file their answers to the TAC within **20 days** of the filing of this order.

IT IS SO ORDERED.

Dated:  September 28, 2020

Hon. Jeffrey T. Miller
United States District Judge

19cv264 JM(MSB)