Case 3:19-cv-00264-DMS-MSB   Document 317   Filed 02/27/25   PageID.11875   Page 1 of 19

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

KRISTEN SCHERTZER; et al., on behalf of themselves and all others similarly situated,

          Plaintiffs,

v.

BANK OF AMERICA, N.A.; et al.,

          Defendants.

Case No.: 19-cv-264-DMS-MSB

**ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

This case comes to the Court following Plaintiff Brittany Covell's appeal and the Ninth Circuit's remand to reconsider class certification. After receipt of the Ninth Circuit's mandate, this case was randomly reassigned to the undersigned district judge. Thereafter, Plaintiff filed her Renewed Motion for Class Certification.[1] (Plaintiff's Motion ("Pl.'s Mot."), ECF No. 311). Defendant Bank of America, N.A. ("BOA") filed an Opposition, (Defendant's Opposition ("Opp'n"), ECF No. 312), and Plaintiff filed a Reply, (Plaintiff's Reply ("Reply"), ECF No. 313). For the following reasons, Plaintiff's Motion is **GRANTED**.

---

[1] Kristen Schertzer was a named plaintiff, but since the appeal of this action, it has been maintained solely by Covell.

1

19-cv-264-DMS-MSB

## I. BACKGROUND

The background of this case has been summarized in numerous prior orders. In a nutshell, Plaintiff alleges that Defendant "charged Plaintiff two separate $2.50 out-of-network ("OON") balance inquiry fees when she used her BOA debit card at a non-BOA ATM." (*See* ECF No. 307); *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1203 (9th Cir. 2024). Plaintiff claims the second fee is invalid because the parties' contract allows Defendant to charge fees only in response to a card holder's "balance inquiry" at a non-BOA ATM. *See id.* at 1203–04. The second fee, according to Plaintiff, was not a balance inquiry. (Third Amended Class Action Complaint ("TAC"), ECF No. 96 at 27–28). As a result, Defendant allegedly "breached its agreements with Plaintiff[] and [c]lass members by assessing [OON] balance inquir[y] fees when customers did not intend to make balance inquiries or were told that the inquiries would be free". (*Id.* at 24). The case has narrowed over time and "now consists solely of claims against [Defendant] for breach of contract and breach of the implied covenant of good faith and fair dealing." (*See* ECF No. 307); *Schertzer*, 109 F.4th at 1205.

On October 16, 2021, Plaintiff filed her first Motion for Class Certification. (ECF No. 198). The district court denied Plaintiff's Motion, finding that Plaintiff failed to meet the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). (*See* ECF No. 271); *Schertzer v. Bank of America*, 2022 WL 1004559, at *20 (S.D. Cal. Apr. 4, 2022) ("All of the predominance issues highlighted provide compelling reasons why these proposed classes should not be certified under Rule 23(b)(3)."). The court "cited three areas in which . . . individual considerations predominated over common ones: (1) the subjective intent of each class plaintiff; (2) variations in the ATM prompts that different class plaintiffs saw; [and] (3) different states' laws that applied to different plaintiffs." (*See* ECF No. 307); *Schertzer*, 109 F.4th at 1215 (citing *Schertzer*, 2022 WL 1004559, at *17–20). On appeal, the Ninth Circuit held:

> Our interpretation of "balance inquiry" ameliorates the "subjective intent" concern [because it] does not require probing the subjective intent of individual ATM

customers. For this reason, we vacate the district court's denial of class certification. It is unclear how our holding might affect the other two concerns identified by the district court. We remand for the district court to reconsider class certification.

*Id.* Pending now is Plaintiff's Renewed Motion. Plaintiff seeks to certify the following class: "All [BOA] checking account holders in the United States who were assessed more than one [OON] balance inquiry fee during the same visit to a FCTI, Inc.-owned ATM located in a 7-Eleven store from May 1, 2018, to November 16, 2021". (Pl.'s Mot. 16).

## II.    LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). It is within the discretion of district courts to certify a class. *Bouman v. Block*, 940 F.2d 1211, 1232 (9th Cir. 1991). "Parties seeking class certification must satisfy each of the four requirements of [Federal] Rule [of Civil Procedure] 23(a) . . . and at least one of the requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). The burden is on the plaintiff to prove, by a preponderance of the evidence, that she meets the requirements of Rule 23. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022), *cert. denied*, 143 S.Ct. 424 (2022). If a court is not satisfied that the plaintiff has met the requirements of Rule 23(a) and (b), certification should be refused. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

When considering class certification, district courts must engage in "a rigorous analysis". *Wal-Mart*, 564 U.S. at 350–51 (citing *Falcon*, 457 U.S. at 161). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). However, "[a] court . . . is merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015). A court's review of the merits

should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 Advisory Committee Notes.

### III. DISCUSSION

**A. Scope**

As an initial matter, the parties dispute the scope of this Court's review. Plaintiff alleges that the Ninth Circuit "issued a mandate to this Court to simply rule on the two . . . issues regarding predominance" that it identified. (Pl.'s Mot. 21); (*see also id.* at 6) ("As part of its order, the Ninth Circuit identified the . . . sole issues necessary to be resolved in ruling on class certification[.]"). Defendant responds that "as with remands generally, the [Court] is free to review any grounds not expressly or impliedly decided on appeal, and certainly any grounds that did not exist at the time of the appeal." (Opp'n 18). The Court agrees with Defendant.

"[W]hile the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the district court any issue not expressly or impliedly disposed of on appeal." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (internal quotation marks and citations omitted); *see also Quern v. Jordan*, 440 U.S. 332, 348 n.18 (1979) ("While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.") (internal citation omitted). The Ninth Circuit held that the subjective intent of each class member is not relevant to the predominance analysis under Rule 23(b)(3). (*See* ECF No. 307); *Schertzer*, 109 F.4th at 1215. It then directed the Court to reconsider the predominance requirement and class certification more generally. *Id.*

The district court's initial Order did not address whether Plaintiff satisfied the four requirements of Rule 23(a) for class certification. (*See* ECF No. 271); *Schertzer*, 2022 WL 1004559, at *17–20. To grant class certification, this Court must determine that Plaintiff's proposed class meets all applicable requirements. It will do so here, examining relevant issues raised by the parties.

### B. Rule 23(a)

"[Federal] Rule [of Civil Procedure] 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (internal quotation marks, brackets, and ellipses omitted). The Rule "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 564 U.S. at 359. Plaintiff contends all four requirements are met. (Pl.'s Mot. 16). Defendant argues that Plaintiff has failed to allege typicality and adequacy. (Opp'n 19).

#### a. Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable". Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Plaintiffs need not state the exact number of potential class members; nor is a specific minimum number required. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.*

Plaintiff points to data between May 2018 and June 2018 showing a total of 65,000 class members. (Pl.'s Mot. 17, Olsen Decl.). Because the class period is from May 1, 2018, to November 16, 2021, Plaintiff contends—and Defendant does not dispute—that the proposed class "would likely be multiples of that figure." (*Id.* at 17). Given the size of this class, the Court finds the numerosity requirement satisfied. *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.") (citing 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23–05[1] (2d ed. 1987)).

### b. Commonality

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class". Fed. R. Civ. P. 23(a)(2). This element has "'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis*, 657 F.3d at 981 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "However, it is insufficient to merely allege any common question". *Id.* Instead, the plaintiff must allege the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution". *Wal-Mart*, 564 U.S. at 350. As summarized by the Supreme Court: "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (internal quotation marks omitted). Because "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions", *Amchem Prods.*, 521 U.S. at 609, the Court addresses commonality in its discussion of Rule 23(b)(3) below.

### c. Typicality

Typicality means that "the claims or defenses of the representative parties are typical of the claims or defenses of the class". Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) focuses on the relationship of facts and issues between the class and its representatives. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012); *see also Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 577 (C.D. Cal. 2016) ("Courts assess typicality by determining whether the class representatives and the rest of the putative class have similar injuries and

conduct."). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiff alleges that she is a typical representative because her claims "arise out of the same course of conduct and are based on the same legal theories" as the proposed class. (Pl.'s Mot. 18). The Court agrees. Plaintiff's proposed class is narrow, including only individuals who used an ATM machine at 7-Eleven, saw the same FCTI prompt, and incurred a second OON fee by Defendant. (*Id.* at 16). Class members suffered the same injury—an overcharge—by the same course of conduct—the display of a balance inquiry prompt. (*See generally id.*). The typicality requirement is therefore met. *See Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422, 428 (S.D. Cal. 2018), *aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.*, 827 F.App'x 628 (9th Cir. 2020) ("Here, the named plaintiffs are typical of the class they seek to represent. They suffered the same injury from the same course of conduct as did unnamed members. To wit, like the unnamed members, BoA charged them with EOBCs."); *see also Petersen*, 312 F.R.D. at 577 ("Here, the named Plaintiffs have alleged injuries that are the same, or at the least very similar, to the injuries of absent class members. And Plaintiffs have also alleged their injuries derive from the same course of conduct—namely, Defendants' manufacturing and sale of the Townsend berry mix.") (internal quotation marks omitted).

### d. Adequacy

Adequacy requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns: "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill*

*v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs and their counsel must have "zeal and competence" to protect the interests of the class. *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

Plaintiff asserts she is an adequate representative because she has "done all she has been asked to do" in acting as representative, has no conflicts of interest with class members, and has "retained qualified and competent counsel with extensive experience and expertise prosecuting complex class actions". (Pl.'s Mot. 19). Defendant argues that Plaintiff's lack of standing renders her inadequate.[2] (Opp'n 19–20). The Court will consider Defendant's standing argument before assessing adequacy more broadly.

A plaintiff who sues in federal court must have standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). The fact that a lawsuit is a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). "[A] named plaintiff who has not been harmed by a defendant is generally an inadequate and atypical class representative for purposes of Federal Rule of Civil Procedure 23". *Id.*; *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("Stated another

---

[2] Aside from standing, Defendant criticizes Plaintiff's alleged pursuit of duplicative litigation. Citing Seventh Circuit caselaw, Defendant contends that Plaintiff's proposal to "certify a duplicative class action—with its attendant (and significant) transaction costs—separately renders her an inadequate representative." (Opp'n 20); (*see also id.* at 21) ("This Court should reject Plaintiff's suggestion that another round of administrative costs, attorneys' fees, and costs should be borne to offer these same class members a refund that they already had the opportunity to obtain."). Defendant's argument relies on the *Weiss* settlement. (*See id.* at 20–21). Because the *Weiss* case is a source of dispute between the parties in their Rule 23(b)(3) analysis as well, the Court will discuss *Weiss*' impact on granting class certification below. *See infra* III.C.a. For the purposes of this section, the Court finds that Plaintiff has not brought duplicative litigation because she was not involved in the later actions against FCTI. (Reply Carpenter Decl.).

way, if Lierboe has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail."). This is a bright-line rule: even "when a class is certified and the class representatives are subsequently found to lack standing, the class should be decertified and the case dismissed". *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019); *see also Carpenter v. PetSmart, Inc.*, 441 F.Supp.3d 1028, 1038 (S.D. Cal. 2020) ("The Court should address standing prior to class certification.").

"[T]he irreducible constitutional minimum of standing contains three elements": (1) an "injury in fact"; (2) a "causal connection between the injury and the conduct complained of"; and (3) redressability. *Lujan*, 504 U.S. at 560–61. At issue is the redressability prong, which requires that it be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

Defendant argues that Plaintiff's settlement with FCTI in this action has redressed her injury. (Opp'n 19) ("[Plaintiff] has already recouped that second OON fee through her settlement with FCTI and, as a result, has been fully redressed."). Plaintiff criticizes Defendant's argument as speculative because the settlement is confidential. (Reply 6). Plaintiff further responds that "Plaintiff did not receive any financial compensation for her settlement". (*Id.*).

The Court has reviewed Plaintiff's confidential settlement with FCTI *in camera*. (*See* ECF No. 315). Plaintiff did not recoup the second OON fee through this settlement. Instead, she obtained injunctive relief. (*See also* Reply Carpenter Decl.) ("Plaintiff and [FCTI] reached a confidential settlement to resolve Plaintiff's claims against FCTI. Plaintiff did not receive any compensation for her settlement but benefited from FCTI's decision to alter its ATM prompt."). She thus has not redressed her pocketbook injury. The Court finds that Plaintiff meets the constitutional requirements of standing. Defendant's argument to the contrary is moot.

Aside from having standing, Plaintiff is adequate because she has diligently represented absent class members. This includes her successful appeal of the district

court's prior Order denying class certification to the Ninth Circuit (and her timely filing of a Renewed Motion for Class Certification following that success, at issue here). *See Farrell*, 327 F.R.D. at 428 (finding adequacy met because "[n]amed plaintiffs and [c]lass [c]ounsel have demonstrated their ability to vigorously prosecute this action on behalf of the class"). Her counsel's familiarity with this dispute points to their competence, not their inadequacy. (Pl.'s Mot. Carpenter Decl.); *see Raines v. U.S. Healthworks Med. Grp.*, 2024 WL 3850812, at *7 (S.D. Cal. Aug. 16, 2024) ("[T]here is no dispute that Plaintiffs' counsel has extensive experience litigating class action cases and has vigorously protected the interests of the class. This matter has been thoroughly litigated, and Plaintiffs' counsel has secured favorable results before the California Supreme Court and Ninth Circuit. The adequacy requirement of Rule 23 is therefore met."). To the Court's knowledge, Plaintiff has no conflicts of interest with those she seeks to represent. *Hanlon*, 150 F.3d at 1020. Because Plaintiff has "taken [her] obligations to the Court seriously", the Court finds her adequate. *Petersen*, 312 F.R.D. at 578. Plaintiff satisfies all four requirements of Rule 23(a).[3]

**C. Rule 23(b)**

    **a. Rule 23(b)(3)**

Plaintiff first seeks certification under Federal Rule of Civil Procedure 23(b)(3). (Pl.'s Mot. 19–20). To qualify for class certification under this Rule, the plaintiff must show that "'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Olean*, 31 F.4th at 663–64 (quoting Fed. R. Civ. P. 23(b)(3)). Plaintiff alleges that both predominance and superiority are met. (Pl.'s Mot. 20). Defendant argues that Plaintiff meets neither element of Rule 23(b)(3). (Opp'n 22, 25).

---

[3] Plaintiff has demonstrated that there are common questions to the class, satisfying Rule 23(a)(2). *See infra* III.C.a.i.

### i. Predominance

Predominance assesses "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 594. "The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a): the plaintiff[ ] must prove that there are questions of law or fact common to class members that can be determined in one stroke, in order to prove that such common questions predominate over individualized ones". *Olean*, 31 F.4th at 664 (internal quotation marks and citations omitted). "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (internal citation omitted). Ultimately, the "predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks and citations omitted). Plaintiffs must prove by a preponderance of evidence that common questions predominate over questions affecting only individual members, and that the common questions relate to "a central issue in the plaintiffs' claim." *Olean*, 31 F.4th at 665. The Court will address points made in the prior Order before moving onto Defendant's new arguments about why Plaintiff has not shown predominance.

### 1. Variation

When analyzing Plaintiff's prior Motion for Class Certification, the district court held that the predominance requirement was not met because of the variation in balance inquiry prompts that class members saw and in states' laws about latent ambiguities and extrinsic evidence. (*See* ECF No. 271); *Schertzer*, 2022 WL 1004559, at *19–20. Plaintiff addressed the district court's prior Order in her Renewed Motion. (Pl.'s Mot. 20–25). Defendant did not. (*See* Opp'n 25–29).

The first issue—the variation in balance inquiry prompts—is now moot. Plaintiff's first Motion for Class Certification sought to certify two classes, one for individuals who were assessed two OON fees at FCTI, Inc. ATM machines and one for individuals who

experienced the same at Cardtronics, Inc. ATM machines. (*See* ECF No. 271); *Schertzer*, 2022 WL 1004559, at *17. The district court's reasoning relied on the "lack of uniformity among the *Cardtronics* ATM screens", not FCTI ATM screens. *Id.* at *19 (emphasis added); *see also id.* ("Thus, to suggest that Cardtronics has only deployed one or two default BBI ATM screens at the company's 70,000+ ATMs vastly oversimplifies Cardtronics' business model and branding partnerships. Rather, . . . BANA customers would have been presented with a number of screen variations associated with the balance inquiry process[.]"). Plaintiff's Renewed Motion seeks certification of only the FCTI class. There is no dispute that FCTI showed the same prompt at its machines, which makes the class "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 594; *see also Polvay v. FCTI, Inc.*, 713 F.Supp.3d 1, 9 (S.D.N.Y. 2024) (noting in related case that "the Continue/Cancel Prompt screen was uniformly displayed at FCTI's ATMs during the class period").

The second issue—the variation in states' laws—has been resolved by the Ninth Circuit's interpretation of balance inquiry. The Ninth Circuit did not view the term as "ambiguous". (*See* ECF No. 307); *Schertzer*, 109 F.4th at 1213. Rather, it interpreted balance inquiry according to its "ordinary and popular meaning", which "requires an objectively clear customer request for balance information from the ATM." *Id.* at 1209. The district court's prior analysis about variation in states' laws examined only contract laws about ambiguous terms and extrinsic evidence, which now do not apply to Plaintiff's breach of contract claim. (*See* ECF No. 271); *Schertzer*, 2022 WL 1004559, at *20; *see also In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) ("[A]s neither party has asserted that the form policy contract contains ambiguous terms . . . , admission of extrinsic evidence should not be necessary to interpret the contractual provisions at issue."). The elements of a breach of contract claim do not vary so greatly between states such that individualized concerns will trump common ones. Accordingly, the concerns previously raised by the district court do not impede the certification of Plaintiff's proposed class.

### 2. *Weiss*

Defendant alleges that the settlement in *Weiss v. FCTI, Inc.*, No. 237-2024-00016908-CU-BT-NC (Cal. Sup. Ct., Cnty. San Diego) creates individualized concerns for class members who are also a part of the *Weiss* class action. (Opp'n 26–28). Plaintiff argues that *Weiss* has no bearing on this Court's predominance inquiry and Plaintiff's class action more generally. (Reply 8–13).

Defendant contends that "any claimants from *Weiss* in the putative class here face individualized Article III standing problems, as well as the prohibition on double recoveries." (Opp'n 26); (*see also id.* at 26–27) ("[T]he *Weiss* settlement redresses the alleged injury—i.e., the OON fee—and then some."). Defendant's argument reflects a misunderstanding of the claims in *Weiss*. In *Weiss*, the plaintiffs sought restitution from FCTI for violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Reply Carpenter Decl. Exhibit 1) ("As a result of Defendant's unfair and deceptive conduct, FCTI has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204."). Specifically, the plaintiffs requested restitution in the amount of "all relevant interchange fees paid to FCTI as a portion of the unwarranted OON balance inquiry fees assessed to [p]laintiffs and the [c]lasses". (*See id.*). The interchange fee amounted to approximately $0.17 of the $2.50 OON fee. (*Id.* at Carpenter Decl.); *Polvay v. FCTI, Inc.*, 2023 WL 2456813, at *1 (S.D.N.Y. Mar. 10, 2023) ("When a customer checks their balance through an FCTI ATM, FCTI receives a portion—on average, $0.17—of the fee assessed by the customer's bank."). The approved settlement agreement provided members of the nationwide class who submitted a valid claim "*up to* $15.00*", presumably determined by the number of times class members incurred the wrongful OON fee and FCTI profited $0.17.[4] (Opp'n Obi Decl. Exhibit H) (emphasis added).

---

[4] The Court's understanding is that a class member who was assessed one wrongful fee would be entitled to restitution of $0.17, a class member who was assessed two wrongful fees would be entitled to $0.34, a

The Court fails to see how recovery for a different legal remedy (restitution) against a different wrongdoer (FCTI) under a different cause of action (violation of the UCL) means that individuals who overlap between the *Weiss* nationwide class and the proposed class here have already had their injuries redressed.[5]  *Weiss*' settlement agreement did not release claims against Defendant and thereby left another avenue for individuals who were assessed a wrongful OON fee to fully remedy their harm.  (*See id.*).    For redressability to be implicated, class members must have recouped the total amount of their pocketbook injury, not only the amount attributable to FCTI.  *Cf. Van v. LLR, Inc.*, 61 F.4th 1053, 1064 (9th Cir. 2023) ("Any monetary loss, even one as small as a fraction of a cent, is sufficient to support standing.  Thus, the presence of class members who suffered only a fraction of a cent of harm does not create an individualized issue that could predominate over class issues.") (internal citation omitted).  Accordingly, there are no individualized questions of standing that defeat predominance.

### 3.  Defenses

Defendant argues that it can raise two mitigation defenses that are individualized and unamenable to resolution on a classwide basis.  (Opp'n 27–29).  First, according to Defendant, "every putative class member in this case has had a reasonable—and in fact, simple—step to mitigate damages: make a claim in *Weiss*." (*Id.* at 27).  However, by Defendant's own admission, Defendant is entitled to invoke this defense "as to *every* putative class member", which raises a common issue that the Court can address in one stroke.  (*Id.* at 27–28) (emphasis added); *Beaver v. Omni Hotels Mgmt. Corp.*, 2023 WL 6120685, at *7 (S.D. Cal. Sept. 18, 2023) ("In addition, failure to mitigate is a defense Defendants can likely raise against all class members.").  Even if the reasons why class members did not submit a claim in *Weiss* are individualized, (Opp'n 28), "there is no reason

---

class member who was assessed three wrongful fees would be entitled to $0.51, and so on.  The $15.00 is merely a cap on the maximum amount a class member could recover.

[5] This analysis also applies to the New York class in *Weiss*, which refers to individuals in *Polvay v. FCTI, Inc.*, No. 1:22-cv-04315-JSR (S.D.N.Y.) who recovered statutory damages under New York's General Business Law.

to think that these questions will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3)," *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014). "That [Defendant] might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Id.*

Second, Defendant alleges that it will have a mitigation-of-damages defense for "class members who incurred more than one OON fee on multiple occasions." (Opp'n 28); (*see also id.*) ("That is, if a customer transacted at an FCTI ATM and incurred two OON fees during the same visit, that customer was thereafter aware of the consequences of selecting 'Continue' at the FCTI ATM screens."). Like Defendant's first alleged defense, this defense does not overpower common questions. *Van*, 61 F.4th at 1066 ("[A] plaintiff need not rebut every individualized issue that could possibly be raised."). Even if it did, Defendant has presented no evidence regarding the applicability of this defense, e.g., the number of class members who were assessed a second OON fee on more than one occasion. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("[W]e do not consider the consent defenses that [the defendant] might advance or for which it has presented no evidence."); *accord Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) ("We are unwilling to allow such speculation and surmise to tip the decisional scales in a class certification ruling[.]"). A failure to mitigate does not undermine typicality. *See, e.g.*, *Beaver*, 2023 WL 6120685, at *7; *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 324 (C.D. Cal. 2015); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *17 (N.D. Cal. June 13, 2014). So too in the predominance context. *See id.* at *29 (holding same for predominance because failure to mitigate damages "is not a defense that requires substantial cross-examination on individual facts"). Therefore, Defendant's mention of defenses it *might* advance is insufficient.

### 4. Jury Waiver

According to Defendant, the agreements governing class members' accounts with Defendant include a jury waiver provision that undermines predominance because "the jury waiver's enforceability varies based on the state where the class members' accounts are located, so some class members will be entitled to a jury trial and others will not." (Opp'n 29). The Court is unconvinced. Defendant has not yet indicated an intent to enforce this waiver provision. *Moreno v. JCT Logistics, Inc.*, 2019 WL 3858999, at *19 (C.D. Cal. May 29, 2019) (rejecting argument that forum-selection clause defeats class certification because defendants did not "express an intent to enforce the new forum-selection clause"). "[T]he potential enforceability of [the provision] as to some class members does not defeat class certification". *Id.*; *see also Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 607 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) ("[T]he majority of cases hold that the existence of contractual provisions does not automatically defeat class certification.").[6]

Neither the district court's previous concerns nor Defendant's new arguments sufficiently challenges Plaintiff's assertion that "questions of law or fact common to class members predominate over any questions affecting only individual members". Fed. R. Civ. P. 23(b)(3). Instead, "common questions present a significant aspect of th[is] case" because class members suffered the same pocketbook injury from Defendant collecting an OON fee based on the same FCTI prompt. *Hanlon*, 150 F.3d at 1022. A determination of whether FCTI's prompt amounts to a balance inquiry as the Ninth Circuit has interpreted

---

[6] Defendant's reliance on *In re LIBOR-Based Financial Instruments Antitrust Litigation* is unpersuasive because the district court listed jury waiver provisions as one reason amongst many that, when considered together, "confirmed" its "skepticism" that "common questions will predominate over individual ones". 299 F.Supp.3d 430, 606 (S.D.N.Y. 2018). The jury waiver provisions were not the focal point of the district court's analysis; they were mentioned only in passing. *See id.*

the term will drive resolution of the contract claims writ large. Plaintiff thus satisfies Rule 23(b)(3)'s predominance requirement.[7]

### ii. Superiority

The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Id.* at 1023 (internal citation omitted). "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* "Generally, the factors relevant to assessing superiority include '(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)(A)–(D)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

This matter is most suitable for adjudication as a class action. Given that individual lawsuits are expensive, class members would likely have minimal interest in pursuing separate actions and are better served through representative litigation. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) ("This case vividly points to the need for class treatment. The individual damages of each merchant are too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony."); *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *Smith v. Microsoft*

---

[7] "To the extent individualized inquiries might arise, the Court can either handle such issues in the context of classwide proceedings or, if necessary, revisit certification." *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).

*Corp.*, 297 F.R.D. 464, 468–69 (S.D. Cal. 2014) ("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit.") (internal quotation marks and citations omitted). Evaluating Defendant's conduct in one trial is also more efficient than having numerous individual trials repetitively addressing the same conduct. *Just Film*, 847 F.3d at 1123–24. Judicial economy would be better served through a class action.

Contrary to Defendant's contention, Plaintiff does not seek "double recovery [that] flies in the face of reducing the possibility of multiple lawsuits." (Opp'n 23) (internal quotation marks and citation omitted). As explained above, the *Weiss* settlement covered only the interchange fee received by FCTI, not the rest of the OON fee retained by Defendant. This class action does not duplicate *Weiss*; rather, it is a vehicle to address (likely) thousands of claims for damages against Defendant. There is no concern that there will be inconsistent judgments because the other suits were against FCTI, not Defendant. *Smith*, 297 F.R.D. at 469 (noting that "[a] class action may be inappropriate if multiple actions are already pending due to the risk of inconsistent judgments") (internal citation omitted). Additionally, "courts often certify [concurrent] class actions arising from similar facts". *Cohen v. Trump*, 303 F.R.D. 376, 389 (S.D. Cal. 2014) (internal quotation marks and citation omitted). The Court therefore finds that the superiority requirement is met. Plaintiff fulfills the elements of Rule 23(b)(3).

### b. Rule 23(b)(2)

As an alternative, Plaintiff seeks certification under Rule 23(b)(2). (Pl.'s Mot. 25–26). Rule 23(b)(2) allows class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole". Fed. R. Civ. P. 23(b)(2). Because Plaintiff satisfies Rule 23(b)(3), the Court need not consider Rule 23(b)(2). *See* Fed. R. Civ. P. 23(b) (test is disjunctive); *see also Briseno*, 844 F.3d at 1124 (explaining that parties seeking class certification must satisfy "one of the requirements of Rule 23(b)").

Accordingly, Plaintiff meets all applicable requirements for class certification under Federal Rule of Civil Procedure 23. The Court **GRANTS** Plaintiff's Motion.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiff's Renewed Motion for Class Certification. The Court certifies a class of all Defendant checking account holders in the United States who were assessed more than one OON balance inquiry fee during the same visit to a FCTI, Inc.-owned ATM located in a 7-Eleven store from May 1, 2018, to November 16, 2021. Within thirty (30) days from the filing of this Order, the parties shall meet and confer on the form of class notice to be provided for this Court's approval and contact the assigned magistrate judge to schedule a case management conference, at which time all dates will be set.

**IT IS SO ORDERED.**

Dated: February 27, 2025

_____
Hon. Dana M. Sabraw, District Judge
United States District Court